## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CURTIS NOVELL YOUNG,

     Petitioner,

-vs-                                   Case No.  8:08-CV-707-T-27TGW

STATE OF FLORIDA,

     Respondent.

_____/

### O R D E R

Petitioner, an inmate in a Florida penal institution proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging convictions for racketeering, conspiracy to commit racketeering, and 25 counts of grand theft entered in 2003 by the Tenth Judicial Circuit Court, Polk County, Florida (Dkt. 1), and two memorandums of law in support of the petition (Dkts. 3, 8).  Respondent filed a response to the petition (Dkt. 19).  Petitioner filed a reply to the response (Dkt. 21-2), and a supplement to the reply (Dkt. 24).

Respondent asserts no challenge to the petition's timeliness.  The matter is now before the Court for consideration on the merits of Petitioner's claims.  An evidentiary hearing is not required for the disposition of this matter.  Rules Governing Section 2254 Cases 8(a) (2011).

### PROCEDURAL HISTORY

On October 9, 2001, Petitioner was charged by Grand Jury Indictment with racketeering, conspiracy to commit racketeering, and 26 counts of grand theft in case no. 2001-6672 (Respondent's Ex. 25, Vol. II

at pgs. 161-185).  On February 17, 2003, Petitioner entered a plea of no contest to all the charges except one of the grand theft charges which the State nolle prossed (Id. at pgs. 201-28).[1]  The plea was entered pursuant to a written plea agreement with the State (Id. at pgs. 238-41).  Petitioner was sentenced to fifteen years incarceration on each of the two racketeering counts and five years on each of the 25 grand theft counts, with all counts running concurrently with each other and the sentences imposed in the four unrelated cases (Id. at pgs. 265-73).  On June 11, 2004, the appellate court per curiam affirmed his convictions and sentences (Respondent's Ex. 4); *Young v. State*, 879 So. 2d 626 (Fla. 2d DCA 2004) [table].

On April 3, 2005, Petitioner filed a motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 motion") raising thirteen grounds for relief (Respondent's Ex. 6).  On May 2, 2005, the state post conviction court issued an order denying grounds 2 through 13 of the Rule 3.850 motion, and directing the State to respond to ground 1 (Respondent's Ex. 7).  Following a response to ground 1 by the Office of the Statewide Prosecutor (Respondent's Ex. 9), the state post conviction court issued an order on January 24, 2006, denying ground 1 (Respondent's Ex. 10).  On August 30, 2006, the appellate court per curiam affirmed the denial of Petitioner's Rule 3.850 motion (Respondent's Ex. 14); *Young v. State*, 939 So. 2d 106 (Fla. 2d DCA 2006) [table].

On January 4, 2007, Petitioner filed a second Rule 3.850 motion (Respondent's Ex. 16).  The state post conviction court denied the second Rule 3.850 motion on February 22, 2007 (Respondent's Ex. 17).  On January 18, 2008, the appellate court per curiam affirmed the denial of Petitioner's second Rule 3.850 motion (Respondent's Ex. 18); *Young v. State*, 976 So. 2d 1115 (Fla. 2d DCA 2008) [table].

On April 24, 2008, Petitioner filed a third Rule 3.850 motion (Respondent's Ex. 22).  The Polk County, Florida, Clerk of the Court's Case Progress Docket indicates that the motion was denied on

---

[1]Petitioner also entered pleas in four unrelated cases (Id.).

September 8, 2008 (Respondent's Ex. 24). On November 6, 2009, the appellate court per curiam affirmed the denial of Petitioner's third Rule 3.850 motion.[2] *Young v. State*, 25 So. 3d 1241 (Fla. 2d DCA 2009) [table].

Petitioner filed his § 2254 petition in this Court on April 7, 2008 (Dkt. 1).[3] The petition raises ten grounds for relief:

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings is highly deferential. Those findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To have a facially valid claim in alleging ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington* , 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable

---

[2]The court takes judicial notice of information available on August 15, 2011, on the Clerk of the Court for the Florida Second District Court of Appeal's website, www.2dca.org, which indicates that Petitioner's Rule 3.850 motion was per curiam affirmed on November 6, 2009. *See Young v. State*, 25 So. 3d 1241 (Fla. 2d DCA 2009) [table].

[3]Although Petitioner's petition was filed with the Court on April 14, 2008, Petitioner delivered his petition to prison officials for mailing on April 7, 2008 (Dkt. 1 at p. 1). Under the mailbox rule set out in *Houston v. Lack*, 487 U.S. 266 (1988), a document is deemed filed by a pro se prisoner when it is delivered to prison authorities for forwarding to the court.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

Our standard of review is "doubly deferential" when "a *Strickland* claim [is] evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable —a substantially higher threshold." *Id*. (quotation marks omitted).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995)("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine,  "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256

F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)). To meet

this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

## DISCUSSION

**Ground One**

In Ground One, Petitioner asserts that counsel was ineffective in failing to investigate, interview, and depose available witnesses Vanbossell Preston, Dennis Bannon, Chauncey Gardner, Vernard Goodman, Willie Lee Brown, Angela Lanier, and Kanisha West.  Petitioner asserts that had counsel interviewed these witnesses, counsel would have discovered that it was Vanbossell Preston "who gave and produced the counterfeit checks" (Dkt. 1 at pg. 5), and that Petitioner was not in Florida at the time of the crimes (Dkt. 3 at pgs. 1-2).

Initially, Ground One is foreclosed by entry of Petitioner's knowing and voluntary nolo contendere plea[4] to the charges in exchange for a lower sentence. A guilty or nolo contendere plea waives all non-jurisdictional defects occurring prior to the time of the plea, generally limiting defendants to challenges implicating the knowing and voluntary nature of that plea. *See Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984). Non-jurisdictional defects that are waived by an unconditional plea of guilty include claims of ineffective assistance of counsel concerning issues litigated prior to entry of

---

[4]A plea of nolo contendere is recognized as the equivalent of a guilty plea in Florida. See Fla. R. App. P. 9.140(b)(2).

the plea. *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986). *See also, United States v. Broce*, 488 U.S. 563 (1989) (when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (holding that a guilty plea represents a break in the chain of events that preceded it in the criminal process).

Furthermore, even if Ground One is not forfeited by virtue of Petitioner's plea, his allegations in the petition are insufficient to support relief. With respect to Lanier, West, and Bannon, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279 at *3 (N.D. Cal. March 7, 1996), *affirmed*, No. 96-15724, 1997 WL 31219 (9th Cir. January 23, 1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id*. Petitioner has failed to present evidence of actual testimony or any affidavit from these three witnesses.

As to the remaining witnesses, Preston, Gardner, Goodman, and Brown, their statements implicate Petitioner in the conspiracy (Dkts. 8 at 32-51; 8-2 at 1-77; 8-3 at 1-58). Therefore, Petitioner has failed to show counsel was deficient in failing to depose these witnesses, or resulting prejudice.

Accordingly, Ground One does not warrant relief.

**Ground Two**

In Ground Two, Petitioner asserts that statements made by fellow prisoners John Willis

7

("Willis") and Ralph Lamones ("Lamones") are newly discovered evidence which entitles him to relief. Specifically, Petitioner asserts that while he was in county jail, Willis told him that Willis had cashed checks which he saw Preston print from a computer in Preston's home. Petitioner also asserts that Lamones told him that he had witnessed Preston print checks from a computer. Petitioner states that both Willis and Lamones signed statements which indicated that they saw Preston print checks from his computer. Petitioner argues that Willis and Lamones' statements support his claim that Preston, not Petitioner, was the person who printed the counterfeit checks and gave them to the co-defendants to cash.

In state court, Petitioner raised this claim in Ground 4 of his first Rule 3.850 motion. (Respondent's Ex. 6 at 18-24). In denying the claim, the state post conviction court stated:

> In response to claim 4, newly discovered evidence in the form of testimony by John C. Willis and Ralph Lamones, Defendant proffers the hand-written, unnotorized letters of John Willis and Ralph Lamones, cross-witnessed by each other, which relay incriminating actions taken by Vanbossell Preston and witnessed by them in November and December of 2002. Defendant then contends the actions of Vanbossell Preston as relayed in the letters would cast doubt on Defendant's guilt. The Court disagrees.

> As stated in *Robinson v. State*, 865 So. 2d 1259, 1262 (Fla. 2004):

> Two requirements must be met in order for a conviction to be set aside on the basis of newly discovered evidence. First, in order to be considered newly discovered, the evidence 'must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.' *Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1324-25 (Fla. 1994). Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. To reach this conclusion the trial court is required to 'consider all newly discovered evidence which would be admissible' at trial and then evaluate the 'weight of both the newly discovered evidence and the evidence which was introduced at the trial.' *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (citations omitted).

*See also Roberts v. State*, 840 So. 2d 962, 972 (Fla. 2002).

Defendant was charged and pled guilty to conspiring with Vanbossell Preston, Dennis Bannon, Chauncey Gardner, Vemard Goodman, Willie Lee Brown, and others in a check forgery and uttering scheme between March 1, 2001 and March 19, 2001. Mr. Preston's criminal actions 20 months later have no legal relevance to whether Defendant participated in the criminal enterprise he was charged with having committed in March of 2001. As such, Defendant's contention fails the second element of the Robinson test; i.e. would not probably produce an acquittal on retrial. Accordingly, **claim 4 is DENIED**.

(Respondent's Ex. 7 at 3) (emphasis in original).

Initially, Petitioner has not framed this claim in his federal petition as a federal constitutional violation. Therefore, the claim is not cognizable on federal habeas corpus review because Petitioner asserts no federal constitutional violation. See 28 U.S.C. § 2254(a); *Swarthout v. Cooke*,   U.S.  , 131 S.Ct. 859, 861, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.")(internal quotations and citations omitted).

Even if Petitioner had framed this claim in the federal petition as a federal constitutional violation, which he did not, a federal claim was not exhausted in state court and is now procedurally barred. A review of the first Rule 3.850 motion and the initial brief on appeal from the denial of that motion shows that Petitioner relied only upon state law in support of his argument on this issue (Respondent's Exs. 6 at 18-24; 13 at 19-21). The basis of Petitioner's argument was that under Florida law, newly discovered evidence, Willis and Lamones' statements, entitled him to withdraw his plea. (Id.). "[O]rdinarily[,] a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*,

541 U.S. 27, 32 (2004). "The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right." *Cook v. McNeil*, 266 Fed. Appx. 843, 845 (11th Cir. 2008) (unpublished opinion) (citing *Duncan v. Henry*, 513 U.S. at 365-66) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971))). Exhaustion is not satisfied "merely" if the petitioner presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (citation omitted). His failure to present federal constitutional argument in the state courts results in a procedural bar of this claim.

Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Petitioner has not demonstrated cause and prejudice or a miscarriage of justice to obtain federal review of the defaulted claim.

Moreover, the claim fails on the merits. Absent a cognizable federal constitutional claim, federal habeas relief is not warranted on a claim of newly discovered evidence. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("'[T]he existence of merely newly discovered evidence relevant to the guilt of a sate prisoner is not a ground for relief on federal habeas corpus' ... [because] federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact.") (citations omitted); *Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir. 1988) (federal habeas relief denied where petitioner presented evidence not previously known to prosecutors at trial that someone else committed the crime at issue).

Finally, there is nothing before this Court which indicates this purported "newly discovered evidence" would have resulted in Petitioner's acquittal. As the state post conviction court stated, Preston's printing counterfeit checks 20 months later has no legal relevance to whether Petitioner participated in the conspiracy for which he was convicted. Moreover, Chauncey Gardner, for example, gave a statement to law enforcement in which he indicated that Petitioner gave him counterfeit checks to cash (Dkt. 8-2 at 1-30). Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact. *See, e. g., Moore v. Dempsey*, 261 U.S. 86, 87-88 (1923) (Holmes, J.) ("What we have to deal with [on habeas review] is not petitioner's innocence or guilt but solely the question whether their constitutional rights have been preserved"); *Hyde v. Shine*, 199 U.S. 62, 84 (1905) ("It is well settled that upon habeas corpus the court will not weigh the evidence").

Accordingly, Ground Two does not warrant relief.

**Ground Three**

Petitioner complains that trial counsel was ineffective in failing to object to Petitioner's convictions for racketeering and conspiracy to commit racketeering being obtained in violation of the Double Jeopardy Clause.

In state court, Petitioner raised this claim in Ground 2 of his first Rule 3.850 motion. (Respondent's Ex. 6 at 10-15). In denying the claim, the state post conviction court stated:

> In response to claim 2, the Court finds Defendant's argument, that his being charged and convicted of both racketeering and conspiracy to commit racketeering violates double jeopardy, is without legal merit. *See Blackburn v. State*, 83 So. 2d 694 (Fla. 1955); and *Smith v. State*, 114 So. 2d 363 (Fla. 1959). Accordingly, **claim 2 is DENIED**.

(Respondent's Ex. 7 at 2) (emphasis in original).

11

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject to the same offence to be twice put in jeopardy of life or limb." *Beverly v. Jones*, 854 F.2d 412, 414 (11th Cir. 1988), *cert. denied*, 490 U.S. 1082 (1989) (quoting U.S. Const. amend. V, cl. 2). "In determining whether successive prosecutions involve the same offense within the meaning of the Double Jeopardy Clause, this court is guided by the test announced in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), wherein the Supreme Court held that two offenses are the same unless each requires proof of an additional fact which the other does not." *Id.* "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton v. United States*, 328 U.S. 640, 643 (1946).

Conspiracy to commit racketeering is different from racketeering in that it is an agreement between two or more people to commit a crime. See Ch. 895.03(4), Fla. Stat. Racketeering is different in that is requires the element of actually committing the designated crime. See Ch. 895.03(3), Fla. Stat.; *Boyd v. State*, 578 So. 2d 718, 721 (Fla. 3d DCA 1991). The offenses are not the same, and therefore none of the convictions violate the protections of the Double Jeopardy Clause.

The state court's determination that this claim was without merit is not contrary to, nor an unreasonable application of, federal law, nor was it an unreasonable determination in light of the facts presented. Accordingly, Ground Three is denied pursuant to § 2254(d).

**Ground Four**

Petitioner complains that trial counsel was ineffective in failing to have him evaluated for competency. Petitioner asserts that both counsel and the trial court were informed that Petitioner had been declared incompetent to stand trial in 1994, had been Baker Acted in 2000, had received mental health treatment in the past, and that he "had never been subsequently declared competent." He asserts

12

that under Florida law, "a prior declaration of impairment, insanity, incompetency presumably remains until shown to have returned to competent state..." (Dkt. 3 at 7). Petitioner argues that since he was found incompetent to stand trial in a separate criminal action in 1994, there had to be a subsequent finding that he had regained his competency in order to proceed in the 2001 criminal case.

In state court, Petitioner raised this claim in Ground 13 of his first Rule 3.850 motion. (Respondent's Ex. 6 at 61-65). In denying the claim, the state post conviction court stated:

> In response to claim 13, that trial counsel was ineffective for failing to have Defendant evaluated for competency after counsel had been informed that Defendant had been declared incompetent in the past and had never been subsequently declared competent, the Court finds the record directly refutes Defendant's contention. At the plea and sentencing hearing conducted by the court on February 17, 2003, Defendant advised the court that he had been declared incompetent in 1994 and had been "Baker Acted" in Pinellas County in 2000 for an issue of suicide. In addition, Defendant advised he had received mental health treatment in the past but was not presently receiving any such treatment. Defendant also advised that, while he did not know whether he was competent because he was not a doctor, he did advise that he understood what he was doing on the date of the plea hearing. After this colloquy with the sentencing court, Defendant's trial counsel was asked if he had any reservations about Defendant's competency based upon his conversations with the Defendant, to which counsel advised that he did not. See Tr. at 16-18. It is clear that Defendant was never declared incompetent in these cases. He was declared incompetent nine years prior to this plea and sentencing hearing in unrelated matters. Additionally, there is no indication in either of the 1998 cases that competency was ever an issue.

> Based upon the foregoing, and after a review of the entire transcript of the plea and sentencing hearing, the Court finds the sentencing court's inquiry and the defense counsel's lack of reservations sufficiently refute Defendant's contention. See Rule 3.210(b), Fla. R. Crim. P.; Section 916.12, Fla. Statutes; and *Trawick v. State*, 473 So. 2d 1235 (Fla. 1985). Accordingly, **claim 13 is DENIED**.

(Respondent's Ex. 7 at 6-7) (emphasis in original).

The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. *James v. Singletary*, 957 F.2d 1562, 1569-70 (11th Cir. 1992)(citing *Pate v. Robinson*, 383 U.S. 375, 384-86 (1966); *Dusky v. United States*, 362 U.S. 402

(1960)). Under *Dusky*, the standard for mental competency to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402 (internal quotation marks omitted). "Due process requires that an adequate hearing be held on competency when the evidence raises a 'bona fide doubt' as to defendant's competency to stand trial." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992)(quoting *Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987). Petitioner fails to meet his burden of showing that there were objective facts known to the trial court which raised a bona fide doubt regarding his competency to stand trial or enter a voluntary plea.

Courts generally consider three factors when determining the need for a competency hearing: (1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence to stand trial. *Drope v. Missouri*, 420 U.S. 162, 180 (1975). There is no allegation or indication in the record that Petitioner exhibited irrational behavior or that his demeanor was inappropriate during the criminal proceedings. Although Petitioner informed the trial court that he had been declared incompetent in 1994 and was Baker Acted in 2000 (apparently for an attempted suicide), he also stated that he was not currently receiving any mental health treatment, that he understood the proceedings and the rights he was waiving by entering his plea, and that he was pleading guilty because he believed it was in his best interest (See Respondent's Ex. 25, Vol. II at 209-24). Further, Petitioner's own documentation belies his claim that he was found incompetent in 1994. The 1994 psychological evaluation report Petitioner provided to the Court in support of Ground Four indicates in pertinent part that "Mr. Young is Competent to Proceed..." (Dkt. 13 at 9). Finally, Petitioner's attorney informed the trial court that based on his conversations with Petitioner, he had no

14

reservations regarding Petitioner's competency (Id. at 217-18).  Petitioner's unsubstantiated assertions that he was found incompetent in 1994, and that he was Baker Acted for an apparent suicide attempt a year prior to the plea hearing did not raise a "bona fide doubt" as to his competency to stand trial or enter a knowing and voluntary plea. Nothing in the record indicates that Petitioner was unable to consult with his lawyer and to have a rational understanding of the proceedings against him. *See Drope*, 420 U.S. at 181 n.16 (noting that a suicide attempt does not always signal incompetency to stand trial). The state trial court judge was in the best position to assess Petitioner and his demeanor during the trial proceedings, and it can be reasonably determined from the state record that objective facts known to the court at the time of trial did not create a bona fide doubt as to his competency to proceed.

To the extent Petitioner asserts that counsel was ineffective in failing to have him evaluated for competency because under Florida law he was presumed to be incompetent until there was a subsequent finding that he was competent, the claim lacks merit.  Petitioner is correct that under Florida law, "[a]n individual adjudicated incompetent is presumed to remain incompetent until adjudicated restored to competence." *Samson v. State*, 853 So. 2d 1116 (Fla. 4th DCA 2003) (citations omitted).  Petitioner, however, does not show that he was adjudicated incompetent by a court prior to the 2003 plea hearing. As noted *supra*, Petitioner's own documentation refutes his allegation that he was found incompetent in 1994.  Dr. Henry Dee's 1994 evaluation concludes in pertinent part that Petitioner was competent to proceed (Dkt. 13 at 9).  Dr. Dee's evaluation indicates Petitioner was charged with a hoax bomb threat (Id. at 5).  The Court takes judicial notice of information available on August 25, 2011, on the database maintained by the Clerk of the Court, Tenth Judicial Circuit, Polk County, Florida, http://www.polkcountyclerk.net/recordsearch, which indicates that Petitioner was charged in case no. 53-1993-cf-003152 with false report about planting a bomb, and possession of a hoax bomb.  See Fed. R.

15

Evid. 201. The docket, however, is devoid of any indication that Petitioner was adjudicated incompetent.[5]  Therefore, Petitioner has not shown that he was entitled to a presumption of incompetency during the 2003 plea hearing, or that there was a "bona fide doubt" as to his competency at that time.

A review of the record in this case demonstrates Petitioner had sufficient present ability to consult with his attorney and had a rational and factual understanding of the proceedings against him. Moreover, in his federal habeas corpus petition, Petitioner does not specifically point to any portion of the plea bargain, plea colloquy, or sentencing, that he did not understand or to which he involuntarily and unknowingly agreed. Therefore, the state trial court's conclusion that counsel was not ineffective in failing to have Petitioner evaluated prior to the change of plea is not objectively unreasonable. Accordingly, Ground Four does not warrant habeas corpus relief.

**Ground Five**

Petitioner asserts that newly discovered evidence, an April 24, 2001 statement co-defendant Willie Lee Brown gave to law enforcement, exonerates him of one of the grand theft charges, specifically, Count 28 of the Indictment (Respondent's Ex. 25, Vol. II at 184). Petitioner asserts that Brown gave statements that showed that Petitioner did not participate in the crime. Specifically, he asserts that Brown stated that Petitioner gave him checks, but when Brown tried to cash them in Lakeland that same night, he was unable to cash them. Petitioner states that Brown subsequently stated that he cashed the checks at a later date in Hernando County, and that Petitioner did not receive any of the money from those cashed checks. Petitioner avers that had he known about Brown's statement, he

---

[5]The docket does indicate that a motion to transport Petitioner to Dr. Dee's office was filed on November 30, 1993.

16

would not have pleaded no contest but instead would have proceeded to trial.

In state court, Petitioner raised this claim in Ground One of his second Rule 3.850 motion. (Respondent's Ex. 16 at 2-7). In denying the claim, the state post conviction court stated that the transcript of Brown's interview did not exonerate Petitioner of the grand theft charge because although Brown stated that he did not actually give Petitioner any of the money from the cashed checks, the grand theft statute, Section 812.014, requires only an attempt to try to obtain the property, not actual receipt of the property (Respondent's Ex. 17 at 1). The state post conviction court also found that Petitioner's assertion that Brown's statement was newly discovered and could not have been discovered earlier with diligence was refuted by the record which showed that Petitioner had asserted in his first Rule 3.850 post conviction motion that he had told counsel to depose Brown prior to entering his guilty plea (Id. at 2).

Petitioner's claim has no merit. First, as noted in Ground Two *supra*, the "existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Townsend v. Sain*, 372 U.S. 293 (1963). *See also Herrera*, 506 U.S. at 400; *Swindle*, 846 F.2d at 707.

Second, there is nothing before this Court which indicates that this purported "newly discovered evidence" would have resulted in Petitioner's acquittal on the grand theft charge. As the state post conviction court stated, under Section 812.014, Fla. Stat., a person commits a theft when he endeavors to obtain or use the property of another, and the "crime is fully proven when an attempt, along with the requisite intent, is established." *Longval v. State*, 914 So. 2d 1098, 1101 (Fla. 4th DCA 2005) (citations omitted). Brown's statement indicates in pertinent part that he identified Petitioner from a photo pack, Petitioner had brought him checks to cash, and there was an agreement that Brown would keep some of the money and give Petitioner the remainder of the money (Dkt. 3 at pp. 30-48). Further, in light of the

fact that Petitioner pleaded no contest to racketeering, conspiracy to commit racketeering, and 25 other

counts of grand theft, and that Brown's statement does not exonerate Petitioner of the grand theft charge

in Count 28 of the Indictment, Petitioner's assertion that had he known of Brown's statement he would

not have entered his plea and would have instead proceeded to trial is at best incredible.

The state court's denial of this claim was not contrary to federal law, or unreasonable in light of

the evidence and facts presented. Accordingly, Ground Five does not warrant relief.

**Ground Six**

Petitioner asserts that Brown's statement demonstrates that the Office of the Statewide

Prosecutor did not have authority to prosecute Petitioner because the crimes did not involve two or more

judicial circuits. Section 16.56, Florida Statutes provides authority for the Office of Statewide

Prosecution to investigate and prosecute certain offenses, including those "connected with an organized

criminal conspiracy affecting two or more judicial circuits." In the instant case, the Indictment charged

in pertinent part that Petitioner was involved in an organized criminal conspiracy involving both the

Tenth and Fifth Judicial Circuits of Florida, i.e., Polk and Hernando Counties (Respondent's Ex. 25,

Vol. II at 161-85).[6] Count 28 of the Indictment indicated that Brown passed the counterfeit check in

Hernando County, and that was related to the criminal conspiracy involving Petitioner that affected Polk

and Hernando Counties (Id. at 184). Therefore, from the face of the Indictment, jurisdiction existed for

the Statewide Prosecutor to prosecute the case because a mutli-circuit conspiracy was charged. Nothing

in Brown's statement establishes that the criminal conspiracy did not affect two or more judicial circuits.

Accordingly, Ground Six does not warrant relief.

---

[6]"As a general rule, . . . jurisdiction will be determined from the face of an indictment or information." *Winter v. State*, 781 So. 2d 1111, 1114 (Fla. 1st DCA 2001). A defendant, however, can challenge the jurisdiction of the Statewide Prosecutor by showing that the facts do not support jurisdiction. *Id.*

**Ground Seven**

In Ground Seven, Petitioner raises a *Brady* claim.[7] He asserts that the prosecution withheld Brown's sworn statement to law enforcement, and that the statement is exculpatory.[8]

A conviction will be set aside for a *Brady* violation where the defendant shows: "(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceeding would have been different." *United States v. Newton*, 44 F.3d 913, 918 (11th Cir.), *cert. denied*, 516 U.S. 857 (1995). Petitioner fails to establish all four *Brady* elements.

First, as discussed in Ground Five *supra*, Brown's statement was not favorable to Petitioner. In fact, it further implicated Petitioner in the conspiracy. Consequently, Petitioner does not show that the government possessed evidence favorable to Petitioner, or a reasonable probability that the outcome of the case would have been different had Brown's statement been revealed to Petitioner before he entered his plea. Second, Petitioner's own allegations establish that before he entered his plea, he knew Brown and asked his attorney to depose Brown. Therefore, he fails to establish that he could not have obtained the information from Brown with any reasonable diligence. *See Mandacina v. United States*, 328 F.3d 995, 1001 (8th Cir. 2003) ("evidence that a movant can discover through his own reasonable

---

[7]*Brady v. Maryland*, 373 U.S. 83 (1963) holds that due process is violated when a prosecutor, whether in good faith or bad faith, withholds material evidence favorable to the accused.

[8]To the extent Petitioner asserts in his second memorandum of law that the government also withheld statements from co-defendants Preston, Gardner, Goodman, and Bannon (see Dkt. 8 at 16-22) the claim is unexhausted as to the statements from co-defendants Gardner, Goodman, and Bannon as the claim was never raised in state court. Further, the claim does not merit relief under § 2254 because, as noted *infra*, the Supreme Court has not extended *Brady* to proceedings in which the defendant enters a plea of guilty or no contest.

investigation is not illegally withheld by the Government within the meaning of § 2255(2), or under *Brady*[]") (citation omitted).

Second, the Supreme Court has not extended *Brady* to proceedings in which the defendant enters a plea of guilty. *See Matthew v. Johnson*, 201 F.3d 353, 361-62 (5th Cir. 2000) ("Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation.") (internal quotation omitted). *See also United States v. Ruiz*, 536 U.S. 622, 634 (2002) (Thomas, J., concurring) ("The principle supporting *Brady* was avoidance of an unfair trial to the accused. That concern is not implicated at the plea stage regardless."). Therefore, Petitioner cannot show that the state courts' denial of Petitioner's *Brady* claim was objectively unreasonable.

The state court's determination that Petitioner's *Brady* claim was without merit is not contrary to, nor an unreasonable application of, federal law, nor was it an unreasonable determination in light of the facts presented. Accordingly, Ground Seven is denied pursuant to § 2254(d).

**Ground Eight**

Petitioner asserts that because he did not know and could not have known of Brown's statement prior to entering his guilty plea, his plea was not knowingly, voluntarily, and intelligently entered. Essentially, Petitioner asserts that his guilty plea was not knowing and voluntary because of the State's alleged *Brady* violation.

The state post conviction court denied this claim on the merits, finding that there was no *Brady* violation because Petitioner failed to establish that he could not have obtained Brown's statement with reasonable diligence (Respondent's Ex. 17 at 2). Initially, as discussed in Ground Seven *supra*,

Petitioner has failed to establish a *Brady* violation.  Consequently, since there is no *Brady* violation, Petitioner cannot establish that his plea was not knowingly, voluntarily, and intelligently entered on the ground that the State committed a *Brady* violation.

Further, "[w]here a claim was adjudicated on the merits in state court, federal courts may not grant habeas relief unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States.*'"  *Jones v. McDonough*, 215 Fed. Appx. 812, 813 (11th Cir. 2007) (unpublished opinion) (quoting 28 U.S.C. § 2254(d)(1)) (emphasis added).  As discussed in Ground Seven *supra*, the Supreme Court has not extended *Brady* to proceedings in which the defendant enters a plea and waives his right to trial.  Consequently, Petitioner cannot show that the state courts' denial of this claim was objectively unreasonable.  *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("No holding of this Court required the [state] Court of Appeal to apply the test of [prior holdings to the] conduct [relevant] here. Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.").

The state court's denial of this claim is not contrary to, nor an unreasonable application of, federal Supreme Court law, nor was it an unreasonable determination in light of the facts presented. Accordingly, Ground Eight is denied pursuant to § 2254(d).

**Ground Nine**

Petitioner complains that trial counsel was ineffective in failing to discover Brown's statement, and unspecified statements by other co-defendants (Dkt. 1 at 25).  First, this claim is unexhausted because Petitioner did not present it to the state courts.  A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. *See Castille v. Peoples*, 489

U.S. 346, 349, *reh'g denied*, 490 U.S. 1076 (1989).  It would be futile to dismiss this case to give

Petitioner the opportunity to exhaust this claim in state court because he could have and should have

exhausted the claim by raising it in his Rule 3.850 motions.[9]  *See Tower v. Phillips*, 7 F.3d 206, 210

(11th Cir. 1993) (where a claim has not been exhausted in state courts but would be barred if presented

there, a federal court may bar the claim by relying upon the applicable state rules, since exhaustion

would be futile).  Accordingly, this claim has been procedurally defaulted.

Petitioner has not shown either cause excusing the default or actual prejudice resulting from the

bar.  Further, he has not shown that he is entitled to the fundamental miscarriage of justice exception.

Second, Petitioner's own factual allegations establish that counsel was not deficient in failing to

discover the statements.  In Ground Seven of his federal habeas petition and in his memorandum of law

in support of Ground Seven, Petitioner states in pertinent part that the State "did not turn over [Brown's

statement] to defense in response to discovery demand." (Dkt. 1 at 23; Dkt. 3 at 16).  In his second Rule

3.850 motion, Petitioner asserted that Brown's statement "could not have been discovered through

diligence where:...Counsel was not provided the evidence by the statewide prosecutor during pretrial

discovery..." (Respondent's Ex. 16 at 3).  Petitioner cannot have it both ways.  If counsel requested

discovery, and the State suppressed the statements, counsel was not deficient in failing to discover the

statements.

Finally, to the extent Petitioner presents his ineffective assistance of counsel claim in the

alternative to his *Brady* claim, i.e., if the State did not suppress the statements, counsel was ineffective in

---

[9]Any further attempt at exhaustion in Florida courts would be futile because his claim would be untimely and procedurally barred under Florida law. Fla. R. Crim. P. 3.850(f); *see Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).

failing to discover the statements, the claim lacks merit.[10]  The two-prong *Strickland* test applies to guilty plea challenges, although the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Petitioner fails to show prejudice because he wholly fails to show that but for counsel's failure to discover the co-defendant's statements, he would not have entered his guilty plea and would have insisted on going to trial.

Petitioner's self-serving claim that he would have proceeded to trial had counsel discovered the statements does not suffice to meet his burden to show prejudice.  A mere allegation by the defendant that he would have insisted on going to trial, although required, is insufficient to establish prejudice. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001)(defendant's mere allegation that he would have insisted on trial but for counsel's errors, although necessary, is ultimately insufficient to entitle him to relief on an ineffective assistance claim; rather, the Court looks to factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial); *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990) ("A mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice.") (citation omitted).  In light of the fact that the co-defendants' statements implicated Petitioner in the cash checking conspiracy (see Dkt. 8 at 32-59; Dkt. 8-2; Dkt. 8-3), Petitioner fails to demonstrate prejudice. *See Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses,

---

[10]The Court notes that the state trial court's docket indicates that counsel filed a demand for discovery and demand for disclosure of material favorable to Petitioner on June 13, 2002, prior to Petitioner entering his plea on February 17, 2003 (Respondent's Ex. 24 at 6).

petitioner could not establish prejudice under the modified "reasonable probability" standard). The record before this Court suggests that but for counsel's alleged error, a reasonable defendant likely still would have pleaded guilty and accepted the State's plea offer.

Accordingly, Ground Nine does not warrant relief.

**Ground Ten**

Petitioner complains that his trial counsel had an actual conflict of interest, and the state trial court should have allowed counsel to withdraw. Specifically, Petitioner asserts that counsel had a conflict of interest because two of the victims were counsel's former clients, and counsel considered them friends. He asserts that counsel had divided loyalty between him and counsel's friends. He argues that counsel's lack of preparation and ineffective assistance establishes that he chose to be loyal to his friends. Therefore, he asserts that he was denied a fair proceeding.

Petitioner raised his conflict of interest claim on direct appeal from his judgment of conviction (Respondent's Ex. 1). The state appellate court per curiam affirmed (Respondent's Ex. 4); *Young v. State*, 879 So. 2d 626 (Fla. 2d DCA 2004) [table].

A criminal defendant is entitled to conflict-free representation. *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980). "A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely." *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993). "An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'" *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (quoting *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987)). "To prove that an actual conflict hindered counsel's performance, petitioner 'must make a factual showing of inconsistent interests' or point to 'specific instances in the record' to suggest an actual impairment of his interests." *Id*. "Prejudice is presumed only

24

if [Petitioner] demonstrates that counsel 'actively represented conflicting interests' and that 'an actual

conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington*, 466 U.S. at

692 (quoting *Cuyler v. Sullivan*, 446 U.S. at 350). "[A] conflict must be actual, not merely speculative;

the mere possibility of conflict does not constitute a Sixth Amendment violation." *Ferrell v. Hall*, 640

F.3d 1199, 1244 (11th Cir. 2011).

In *Ferrell*, the United States Court of Appeals for the Eleventh Circuit reiterated the following

test it has adopted to determine whether actual conflict of interest can be discerned:

> We will not find an actual conflict unless [the defendant] can point to specific instances
> in the record to suggest an actual conflict or impairment of [her interest]. The defendant
> must make a factual showing of inconsistent interests and must demonstrate that the
> attorney made a choice between possible alternative courses of action, such as eliciting
> (or failing to elicit) evidence that favors an interest in competition with that of the
> defendant. If [the attorney] did not make such a choice, the conflict remained
> hypothetical.

*Id.* at 1244 (quoting *Buenoano v. Singletary*, 74 F.3d 1078, 1086 n.6 (11th Cir. 1996) (quoting *Smith v.*

*White*, 815 F.2d 1401, 1404 (11th Cir. 1987) (internal citations and quotation marks omitted))).

Petitioner has offered only speculation of an actual conflict. There is no evidence in the record

that counsel actively pursued an interest of the victims'/friends' which was in competition with

Petitioner's interests. The record shows that counsel brought the issue to the state court's attention

(Respondent's Ex. 25, Vol. II at 203-205). The state trial court adequately inquired into any potential

conflict of counsel (Id. at 203-207).[11] The State announced that it had dropped the charge relating to

defense counsel's friends (Id. at 205; 215). Defense counsel informed the court that despite knowing

two victims, he had "no personal animosity toward [Petitioner,]" that "in his view, [Petitioner's]

---

[11]The Eleventh Circuit has held that "in the situation where there is both a timely objection *and* the trial court fails to appoint separate counsel or to inquire adequately into the possibility of a conflict of interest, the reversal will be automatic." *Hamilton v. Ford*, 969 F.2d 1006, 1012 (11th Cir. 1992) (emphasis in original).

trepidation is unfounded," and that he believed that Petitioner "would be better off this morning taking a deal that we had worked out, but he wants me to run this past the Court first." (Id. at 204).[12]  Habeas courts generally defer to the judgment of defense counsel regarding the existence or absence of a disabling conflict. *Mickens v. Taylor*, 535 U.S. 162, 167-68 (2002).

The trial court's inquiry into the alleged conflict and its reliance on defense counsel's representations were sufficient to meet the requirements of the Sixth Amendment. "Until...a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Mickens v. Taylor*, 535 U.S. at 175.  *See also Carter v. Scribner*, 2009 U.S. Dist. LEXIS 117934, 2009 WL 4163542, *6 (E.D. Cal. 2009) ("[Counsel]'s pre-representation relationship with [the victim], whether it was truly in passing or involved something more, created a theoretical division of loyalties . . . [but] Petitioner has not shown that [Counsel]'s relationship manifested itself in an actual conflict that negatively impacted the quality of his representation of Petitioner.") (citation and quotation marks omitted).

Moreover, even assuming an actual conflict existed, Petitioner has not demonstrated that counsel's relationship with two of the victims adversely affected counsel's performance.  Nothing in the record demonstrates that defense counsel failed to pursue any reasonable defense or strategy because of any conflict with counsel's other loyalties.  Consequently, Petitioner cannot show that the alleged conflict of interest resulted in actual prejudice.  Therefore, he is not entitled to habeas relief. *See Brecht*

---

[12]Defense counsel had an obligation to honestly advise the court of a discovered conflict of interest. *Holloway v. Arkansas*, 435 U.S. 475, 486 (1978).  "When a considered representation regarding a conflict in clients' interests comes from an officer of the court, it should be given the weight commensurate with the grave penalties risked for misrepresentation." *Id*. at n.9.

*v. Abrahamson*, 507 U.S. 619, 637 (1993) ("[H]abeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'").

Petitioner has failed to show that the state court's denial of his conflict of interest claim was contrary to or an unreasonable application of clearly established federal law. Accordingly, Ground Ten does not warrant relief.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, it is **ORDERED**:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"

27

*Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4

(1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma*

*pauperis*.

**DONE and ORDERED** in Tampa, Florida, on _Au̇gust 30ᵗʰ_____, 2011.


JAMES D. WHITTEMORE
United States District Judge


SA:sfc
Copy to: Petitioner *pro se*
         Counsel of Record